IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RUTH E. T., | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
| v. | )   Case No. 24-CV-005-MTS |
| | ) |
| MARTIN O'MALLEY, | ) |
| Commissioner of Social Security, | ) |
| | ) |
|       Defendant. | ) |

## OPINION AND ORDER

Plaintiff Ruth E. T. requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for disability benefits under the Social Security Act. Plaintiff appeals the decision of the Administrative Law Judge ("ALJ") and asserts the Commissioner erred because the ALJ incorrectly determined she was not disabled. For the reasons discussed below, the Court **AFFIRMS** the Commissioner's decision denying benefits.

### Social Security Law and Standard of Review

Disability under the Social Security Act ("SSA") is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the SSA "only if h[er] physical or mental impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability

claim. *See* 20 C.F.R. §§ 404.1520, 416.920. Step one requires the claimant to establish that she is not engaged in substantial gainful activity as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that she has a medically severe impairment or combination of impairments that significantly limit her ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied.

At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that she does not retain the residual functional capacity ("RFC") to perform her past relevant work.

If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant—taking into account her age, education, work experience, and RFC—can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Id.* at 750.

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). A court's review is limited to two inquiries: 1) whether the correct legal standards were applied; and 2) whether the decision was supported by substantial evidence. *Noreja v. Soc. Sec. Comm'r*, 952 F.3d 1172, 1177 (10th Cir. 2020) (citation omitted). Substantial evidence is "more

than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). However, a court may not reweigh the evidence nor substitute its judgment for that of the Commissioner. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Even if a court might have reached a different conclusion, the Commissioner's decision will stand if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## Background and Procedural History

On June 15, 2020, Plaintiff filed an application for disability insurance benefits, 42 U.S.C. § 401, *et seq.*, under Title II of the SSA. (R. 372–75). She alleged an inability to work beginning on February 7, 2015, due to limitations resulting from fibromyalgia, chronic pain, migraine headaches, pseudo seizures, severe anxiety, and memory issues. (R. 17, 110–27, 447). Plaintiff was forty-five years old at the time of the ALJ's decision. (R. 31, 33). She has at least a high school education and past relevant work as a radiological technologist. (R. 31).

Plaintiff's application was denied both initially and upon reconsideration. (R. 108–50). On February 2, 2022, ALJ Patricia Witkowski Supergan issued a decision denying benefits and finding Plaintiff not disabled. (R. 151–77). On September 9, 2022, the Appeals Council issued a remand order vacating the Commissioner's decision and remanding the case for further proceedings. (R. 178–83).

ALJ Dennis LeBlanc then conducted a second administrative hearing on May 9, 2023. (R.

43–74). ALJ LeBlanc issued a decision on June 28, 2023, denying benefits and finding Plaintiff not disabled. (R. 14–42). Plaintiff sought review by the Appeals Council, which was denied on November 7, 2023. (R. 1–6). As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. § 404.981.

### Decision of the Administrative Law Judge

Following the five-step sequential process, the ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of February 7, 2015, through her date last insured of December 31, 2020. (R. 19). At step two, he found Plaintiff suffered from the severe impairments of fibromyalgia, seizures, migraines, obesity, major depressive disorder, and generalized anxiety disorder. *Id.* The ALJ determined at step three that Plaintiff's impairments did not meet or equal a listed impairment. (R. 20–24). Based upon his consideration of Plaintiff's subjective allegations, the medical evidence, and the medical source opinion evidence, the ALJ concluded that Plaintiff retained "the [RFC] to perform light work" with the following additional limitations:

> [T]he claimant is able to occasionally lift or carry 20 pounds and frequently lift or carry 10 pounds. She can stand and/or walk for 6 hours in an eight-hour workday and sit for 6 hours in an eight-hour workday[.] She can occasionally climb ramps and stairs but should not climb ladders, ropes, or scaffolds. She is capable of occasional stooping, kneeling, crouching, and crawling. The claimant can frequently reach, handle, or finger. She needs to avoid exposure to workplace hazards such as dangerous machinery and unprotected heights. She is not able to drive as part of her work duties. She can perform simple and routine tasks throughout the workday. She would need an occupation that does not require her to communicate or interact directly with members of the general public.

(R. 24).

At step four, the ALJ determined Plaintiff was not able to perform her past relevant work as a radiological technologist. (R. 31). After consultation with a vocational expert, the ALJ concluded at step five that Plaintiff could perform the representative jobs of routing clerk,

4

production assembler, and collator operator. (R. 32). As a result, the ALJ found Plaintiff had not been under a disability from February 7, 2015, through December 31, 2020, the date Plaintiff was last insured. (R. 33).

## Errors Alleged for Review

Plaintiff alleges two errors for review: 1) the ALJ failed to comply with 20 C.F.R. § 404.1520c by failing to consider the medical opinion of Melinda Shaver, PsyD; and 2) the ALJ's decision is not supported by substantial evidence due to his failure to include limitations addressing the frequency of Plaintiff's pseudo seizures. (Docket No. 11 at 9–13). In response, the Commissioner asserts that the ALJ properly considered Dr. Shaver's records as a non-medical opinion. (Docket No. 13 at 4–6). Additionally, the Commissioner argues that the ALJ's RFC is supported by substantial evidence. *Id.* at 6–10.

## The ALJ's Consideration of Dr. Shaver's Records

For claims filed after March 27, 2017, medical opinions are evaluated pursuant to 20 C.F.R. § 404.1520c. A medical opinion is defined as "a statement from a medical source about what [the claimant] can still do despite [her] impairment(s) and whether [she] ha[s] one or more impairment-related limitations or restrictions in . . . [her] ability to perform physical demands of work activities . . . including manipulative or postural functions[.]" *Id.* § 404.1513(a)(2)(i). Under these rules, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s), including those from [a claimant's] medical sources." *Id.* § 404.1520c(a). Instead, the ALJ must "articulate" in the decision how persuasive he finds each medical source's opinion by considering a list of factors. *Id.* § 404.1520c(b). The factors include: (i) supportability; (ii) consistency; (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and

extent of treatment relationship, and examining relationship); (iv) specialization; and (v) other factors that tend to support or contradict a medical opinion or prior administrative finding (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."). *Id.* § 404.1520c(c). The most important factors are supportability and consistency, and the ALJ must explain how both factors were considered. *See* 20 C.F.R. § 404.1520c(b)(2).[1]

Plaintiff argues that the ALJ failed to properly consider Dr. Shaver's opinion that Plaintiff "is not emotionally capable of employment." (Docket No. 11 at 9–11) (quoting R. 698). Specifically, she asserts that the ALJ failed to discuss the supportability and consistency factors as to Dr. Shaver's opinion. (Docket No. 11 at 9–11). The Commissioner claims that Dr. Shaver's statement is not a medical opinion and therefore not subject to the requirements of 20 C.F.R. § 404.1520c. (Docket No. 13 at 4).

On September 16, 2020, Dr. Shaver conducted a consultative examination of Plaintiff. (R. 696–700). Dr. Shaver's report stated, in relevant part: "[Plaintiff's] mental health prognosis is poor. She is not receiving mental health treatment but she is taking psychotropic medication. [Plaintiff] is not emotionally capable of employment." (R. 698). The ALJ thoroughly discussed the examination done by Dr. Shaver in his RFC assessment, mentioning Plaintiff's self-report that her seizures were stress induced and noting Plaintiff's performance on various diagnostic tests completed during the exam. (R. 26, 29) (citing R. 696, 698).

---

[1] Generally, the ALJ is not required to explain how the other factors were considered. *Id.* However, if the ALJ finds "that two or more medical opinions or prior administrative findings about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ must explain how he considered the other factors. *Id.* § 404.1520c(b)(3).

The Court agrees with the Commissioner that the ALJ was not required to consider Dr. Shaver's statement that Plaintiff "is not emotionally capable of employment[]" or evaluate the statement pursuant to 20 C.F.R. § 404.1520c. (R. 698). "Under the regulations applicable here, statements by a medical source reflecting judgments about the nature and severity of a claimant's impairments and her prognoses are not considered 'medical opinions.'" *Staheli v. Comm'r, SSA*, 84 F.4th 901, 905 (10th Cir. 2023) (citing 20 C.F.R. § 404.1513(a)(3)). Further, "[s]tatements on issues reserved to the Commissioner, including on the ultimate issue of whether the claimant is or is not disabled or *able to work*, are evidence that is 'neither valuable nor persuasive,' and the ALJ is not required to 'provide any analysis about how [he] considered such evidence in [his] determination or decision.'" *Id.* (quoting 20 C.F.R. § 404.1520b(c)(3)) (emphasis added). Additionally, general statements about a claimant's prognosis that do not provide evidence addressing the claimant's ability to perform specific demands of work activities are not considered to be medical opinions. *Staheli*, 84 F.4th at 907 (citing 20 C.F.R. § 404.1513(a)(2)). Thus, the Court is unpersuaded by Plaintiff's first argument.

### The ALJ's RFC Assessment

"RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *2 (July 2, 1996). The RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* at *7. The ALJ must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the

7

maximum amount of work-related activity the individual can perform based on the evidence in the case record. *Id*. He must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id*. If there is a conflict between the RFC and a medical source opinion, the ALJ must "explain why the opinion was not adopted." *Id*. However, there is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012). "[T]he ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004).

Plaintiff argues that the ALJ's RFC assessment is not supported by substantial evidence because he failed to include any limitation directly addressing the frequency of Plaintiff's pseudo seizures. (Docket No. 11 at 11–13). In response, the Commissioner asserts that the ALJ determined that the evidence of record did not support Plaintiff's subjective complaints regarding the frequency of her pseudo seizures and therefore included the appropriate RFC limitations. (Docket No. 13 at 6–10).

The ALJ first addressed Plaintiff's subjective complaints regarding her severe impairments of fibromyalgia, seizures, migraine headaches, and obesity. (R. 25). The ALJ concluded that, although Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms[, Plaintiff's] statements concerning the intensity, persistence, and limiting effects of these symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record . . ." *Id.* The ALJ then discussed records indicating that Plaintiff's seizure-like activity was witnessed at the Warren Clinic in January 2020. (R. 26) (citing R. 606). These records also indicated that Plaintiff's seizures were "not obviously [] generalized tonic-clinic seizure[s.]" *Id.* (citing R. 610). In February 2020, Plaintiff was diagnosed with pseudo

8

seizures, as an electroencephalogram ruled out epileptiform patterns. *Id.* (citing R. 616, 635–36, 763). According to Dr. Shaver's records, Plaintiff stated that her seizures were stress induced. (R. 26–27) (citing R. 696).

When discussing the opinions of the state agency consultants, the ALJ noted that both Herbert Meites, M.D., and William McAfee, M.D., advised that Plaintiff "should avoid concentrated exposure to hazards due to pseudoseizures." (R. 29) (citing R. 119–21, 139–41). Ultimately, the ALJ found the state agency consultants' opinions that Plaintiff should not drive and avoid exposure to hazards were consistent with her pseudo seizure diagnosis. (R. 30). For these reasons, the ALJ determined that certain RFC limitations were appropriate to account for her pseudo seizures. (R. 27). Specifically, the ALJ limited Plaintiff to no climbing of ladders, ropes, or scaffolds; avoidance of exposure to workplace hazards such as dangerous machinery and unprotected heights; and not driving as part of her work duties. *Id.* However, he found that Plaintiff's RFC necessitated more restrictive exertional, postural, and manipulative limitations than those recommended by the state agency consultants. (R. 30).

Plaintiff, without citing to any supporting evidence as to the frequency of her pseudo seizures, contends that the ALJ erred by not including an RFC limitation directly addressing said frequency. (Docket No. 11 at 12). Plaintiff failed to show that the record supports further functional limitations resulting from her seizure disorder which are not otherwise accounted for in the RFC. *See Cloud v. Comm'r of SSA*, No. CIV-16-1112-M, 2017 WL 2492013, at *5–6 (W.D. Okla. May 12, 2017), *report and recommendation adopted*, 2017 WL 2484846 (W.D. Okla. June 8, 2017) (citing *Hersch v. Barnhart*, 470 F. Supp. 2d 1281, 1286 (D. Utah 2006)). "Plaintiff points to nothing significantly probative that the ALJ rejected or ignored. *Clifton* [*v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996)]. The Court finds that Plaintiff is . . . asking the Court [to] reweigh

evidence in h[er] favor, which the Court cannot do. *See Smith* [*v. Colvin*, 821 F.3d 1264, 1266 (10th Cir. 2016)]." *Charles A. O. v. O'Malley*, No. 22-cv-00553-SH, 2024 WL 1256335, at *8 (N.D. Okla. Mar. 25, 2024).  The Court is unpersuaded by Plaintiff's second argument.

## Conclusion

For the foregoing reasons, the ALJ's decision finding Plaintiff not disabled is **AFFIRMED**.

IT IS SO ORDERED this 12th day of August, 2024.

MARK T. STEELE, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT